UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾x

DARIUS AMES,

        Plaintiff,

    -against-                            No. 20-cv-11081

CITY OF NEW YORK, SCOTT WILLIAMS, ANTHONY PETERS, DARRYL E. FONTAINE, IVAN VALLE, HANTZ MULLER, AND JOHN OR JANE DOE 1-10, INDIVIDUALLY AND OFFICIALLY IN THEIR CAPACITIES AS NEW YORK CITY POLICE OFFICERS OR NEW YORK CITY CORRECTION OFFICERS,

        Defendants.

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾x

### MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

On January 3, 2018, Plaintiff Darius Ames ("Plaintiff") was arrested for an assault that allegedly occurred on December 24, 2017. The case was brought before a grand jury and Plaintiff was indicted for Attempted Assault in the First Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. Subsequently, Plaintiff's criminal case in connection with his arrest on January 3, 2018 was dismissed.

Plaintiff thereafter brought civil claims against Officers Scott Williams, Anthony Peters, Darryl E. Fontaine, Ivan Vale[1], and Hantz Muller (the "Defendant Officers") of the New York

---

[1] From the briefing on the motion to dismiss, it appears that the Complaint misspells the name of Defendant Ivan Vale as "Ivan Valle." For the purposes of this decision, I will spell his name as Officer Vale spells it.

1

City Police Department ("NYPD"); ten John/Jane Doe NYPD Officers or New York City Department of Correction ("DOC") Officers; as well as the City of New York (collectively, "Defendants").

Plaintiff asserts federal claims for unlawful search and seizure, false arrest, excessive force, malicious prosecution, malicious abuse of process, denial of the right to a fair trial, deprivation of rights and denial of equal protection of the laws, conspiracy to interfere with civil rights and failure to prevent the conspiracy, failure to intervene, and violation of due process, as well as a municipal liability claim against the City of New York. Plaintiff also asserts New York State law claims for unlawful search and seizure, false arrest, assault and battery, malicious prosecution, malicious abuse of process, denial of the right to a fair trial, deprivation of rights and denial of equal protection of the laws, failure to intervene, and violation of due process, as well as a negligent hiring, training, retention and supervision claim against the City of New York.

Defendants have moved for summary judgment. For the reasons outlined below, the motion is GRANTED.

## BACKGROUND

### I. The Parties

Plaintiff Darius Ames is a resident of the State of New York. (Complaint ("Compl.") ¶ 8).

Defendants Scott Williams, Anthony Peters, and Darryl Fontaine were, at all relevant times, detectives employed by the NYPD. Defendant Ivan Vale was, at all relevant times, a police officer employed by the NYPD. Defendant Muller was, at all relevant times, a lieutenant employed by the NYPD. (*Id.* ¶ 12-16).

Defendants John or Jane Doe 1-10 were police officers, detectives, parole officers, corrections officers, supervisors, policy makers and/or officials employed by the NYPD. (*Id.* ¶ 17).

2

Plaintiff has also sued New York City under a theory of municipal liability for the actions of the individual defendants. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).

## II. Factual Background

On December 24, 2017, Arnold Williams was assaulted with a weapon (possibly a razor-knife (Dkt. No. 29-1)) in front of 419 West 17th Street in New York, New York. (Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (Dkt. No. 30) ("Defs.' 56.1") at ¶ 1). Mr. Williams called 911 and Officer Ivan Vale and his partner, Officer Sharbel Mohammed, responded to the scene. (*Id.* ¶¶ 2-3). Mr. Williams informed the officers that (i) he was assaulted, (ii) he knew the individual who had assaulted him, (iii) the assailant's first name was Darius, (iv) both Mr. Williams and the assailant had a relationship with the same woman, and (v) the woman lived in the building in front of which Mr. Williams was assaulted. (*Id.* ¶ 4). As a result of the assault, Mr. Williams sustained a laceration to the arm and received medical attention from Emergency Medical Services. (*Id.* ¶ 5).

When Detective Williams arrived on scene, he spoke with Mr. Williams. (*Id.* ¶ 6). Mr. Williams told Detective Williams that he knew his assailant. (*Id.* ¶ 7). Detective Williams conducted a confirmatory photographic identification procedure and Mr. Williams positively identified Plaintiff as his assailant. (*Id.* ¶ 8).

Detective Williams took photographs of Mr. Williams' bandaged arm and cut clothing. (*Id.* ¶ 9). He also reviewed video surveillance footage from the front of 419 West 17th Street, New York, New York, which showed that both Mr. Williams and Plaintiff were present at the time Mr. Williams was assaulted. (*Id.* ¶¶ 10-11).

A detective from the NYPD Warrant Squad apprehended and handcuffed Plaintiff on January 3, 2018, and brought him to the 10th Precinct. (*Id.* ¶ 12). While traveling to the precinct inside of the car, Plaintiff complained about the handcuffs but was told that they could not be loosened at that time because they were already moving. (*Id.* ¶ 13). Plaintiff did not complain about the handcuffs again. (*Id.* ¶ 14). Plaintiff did not suffer any physical injury as a result of the handcuffs allegedly being tight. (*Id.* ¶ 15). No strip search or cavity search was conducted on Plaintiff's person while at the Precinct. (*Id.* ¶ 16-17).

Detective Williams interviewed Plaintiff at the Precinct. Plaintiff confirmed that, on December 24, 2017, he was at 419 West 17th Street within the time frame of the assault on Mr. Williams. (*Id.* ¶ 18). Plaintiff was thereafter charged with Assault in the Second Degree. He was arraigned and bail was set. (*Id.* ¶ 19).

On January 22, 2018, Plaintiff was indicted by a grand jury for Attempted Assault in the First Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. (*Id.* ¶ 20).

Plaintiff was in DOC custody from January 2018 until November 2018, when he was released. (*Id.* ¶ 21). The record does not reveal why the criminal charges were dismissed.

### III. Procedural Posture

On December 30, 2020, Plaintiff filed his Complaint in this action. (Dkt. No. 1).

The twenty-one count Complaint alleges eleven federal claims: nine claims under 42 U.S.C. § 1983 for unlawful search and seizure, false arrest, excessive force, malicious prosecution, malicious abuse of process, denial of the right to a fair trial, failure to intervene, violation of due process, and a municipal liability claim under *Monell*, 436 U.S. 658 (1978) against the City of New York; as well as a claim for deprivation of rights and denial of equal protection of the laws

under 42 U.S.C. §§ 1981 and 1983, and conspiracy to interfere with civil rights and failure to prevent the conspiracy under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Plaintiff also asserts ten New York State law claims for unlawful search and seizure, false arrest, assault and battery, malicious prosecution, malicious abuse of process, denial of the right to a fair trial, deprivation of rights and denial of equal protection of the laws, failure to intervene, violation of due process, and a negligent hiring, training, retention and supervision claim against the City of New York. (Comp. ¶¶ 66-213).

Defendants filed their motion for summary judgment on August 12, 2022. (Dkt. No. 28).

## LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" "if it might affect the outcome of the suit under the governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "Uncertainty as to the true state of any material fact defeats

the motion." *U.S. v. One Tintoretto Painting Entitled The Holy Fam. With Saint Catherine & Honored Donor*, 691 F.2d 603, 606 (2d Cir. 1982).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1). "Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor." *United Specialty Ins. Co. v. JD Com. Builders Inc.*, No. 18-cv-6735 (CM), 2020 WL 49017661, at *3 (S.D.N.Y. Aug. 20, 2020).

## DISCUSSION

**I. Plaintiff Has Abandoned His Excessive Force, Denial of the Right to a Fair Trial, Deprivation of Rights and Denial of Equal Protection of the Laws, Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy, Failure to Intervene, Violation of Due Process, Municipal Liability, and State Law Claims (Counts I, III, V, VI, VII, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI)**

Plaintiff does not oppose Defendants' motion with respect to his claims for excessive force (Count VI), denial of the right to a fair trial (Count XII), deprivation of rights and denial of equal protection of the laws (Count XIV), conspiracy to interfere with civil rights and failure to prevent the conspiracy (Count XV), failure to intervene (Count XVII), violation of due process (Count XXI), and municipal liability (Count XIX). In addition, Plaintiff does not address Defendants' contention that his New York State law claims (Counts I, III, V, VII, IX, XI, XIII, XVI, XVIII, XX) fail because Plaintiff failed to comply with New York General Municipal Law §§ 50(e) and because they are otherwise without merit. (*See* Dkt. No. 31 at 23).

"This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cnty. of Orange, N.Y.*, 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) (citing cases); *see also S.E.C. v. Kelly*, 765 F.Supp.2d 301, 323 (S.D.N.Y.2011).

Accordingly, due to Plaintiff's failure to address in any way Defendants' arguments with respect to these claims, Defendants' motion for summary judgment dismissing Counts I, III, V, VI, VII, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI is GRANTED.

## II. The Motion for Summary Judgment on Plaintiff's False Arrest Claim is Granted (Count IV)

To establish a claim for false arrest, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted). A federal false arrest claim raised under § 1983 is "substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause "is a complete defense to an action for false arrest." *Id.* Probable cause to arrest exists when officers have "reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* "Whether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant. . . Accordingly, Defendants prevail if there was probable cause to arrest Plaintiff for any single offense." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012), as amended (Dec. 4, 2012) (internal quotations and citations omitted).

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). Furthermore, "because an unequivocal identification of a suspect received by police from a victim or eyewitness can provide probable cause, then, assuming the information . . . relied upon was wrong, probable cause exists even where it is based

upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994) (quoting *Colon v. City of New York*, 468 N.Y.S.2d 453, 455-56 (1983)).

The parties do not dispute that Mr. Williams – the putative victim – was assaulted with a weapon on December 24, 2017. (Defs.' 56.1 ¶ 1). Nor do they dispute that Mr. Williams and Plaintiff were known to each other, and that Mr. Williams identified Plaintiff as the assailant. (*Id.* ¶ 4). However, Plaintiff argues that the circumstances surrounding Mr. Williams' assault raise doubts as to his veracity, making his statements insufficient to justify a finding of probable clause.

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. In other words, relying on a complaining witness' testimony as the basis for probable cause is "particularly appropriate where the complainant has signed a complaint or information, and there must be no circumstances that raise doubts as to the victim's veracity." *Abusikin v. City of New York*, No. 18 CIV. 4582 (AT), 2021 WL 930349, at *6 (S.D.N.Y. Mar. 11, 2021).

Plaintiff first notes that the criminal complaint was not signed by Mr. Williams but instead by Detective Williams. He argues that, because Mr. Williams would not have been subjected to criminal liability for any false statement in the complaint, the Detective was not justified in relying on Mr. Williams' statement. This is errant nonsense. Police officers always sign criminal complaints that are prepared by the district attorney's office; that is a matter of common practice. And the criminal complaint was not prepared and signed until well after Detective Williams arrived at the scene of the crime and took the victim's statement. It was that statement, made at the scene of the crime, on which the Detective relied in arresting Plaintiff. "Courts [] have found

reliance on a victim's statements made in the heat of the moment reasonable where outside evidence supported the truth of the victim's accusation." *Abusikin*, 2021 WL 930349, at *6; *Ziming Shen v. City of New York*, 725 F. App'x 7, 13 (2d Cir. 2018). Probable cause for an arrest would rarely exist if an officer had to have a sworn statement from a victim before making an arrest, because officers do not take sworn statements on the street.

Next, Plaintiff alleges that the circumstances of the assault raise doubts as to Mr. Williams' veracity. Specifically, he argues that (i) Mr. Williams was the ex-boyfriend of the same woman Plaintiff was visiting on the date of the alleged assault; (ii) Detective Williams merely observed and photographed the bandage applied by Emergency Medical Services on Mr. Williams' arm, but did not personally observe or photograph the actual injury; and (iii) the video surveillance did not depict Plaintiff with a sharp object and no weapon was ever recovered. Together, Plaintiff argues that these facts raise doubt as to the veracity of Mr. Williams and negate probable cause for arrest.

But these are silly arguments. Ample evidence aside from Mr. Williams' accusation justified the arrest of Plaintiff. Detective Williams conducted a confirmatory photographic identification procedure with Mr. Williams, who positively identified Plaintiff as the individual that assaulted him. (*Id.* ¶ 8). While at the scene of the assault, Detective Williams took photographs of Mr. Williams' bandaged arm and cut clothing – indicia of both an assault and physical injury. (*Id.* ¶ 8). It was not necessary for the Detective to take off the bandage that had been applied by Emergency Medical Services so he could see the wound for himself. Detective Williams also reviewed video surveillance footage from the front of 419 West 17th Street, which corroborated that both Mr. Williams and Plaintiff were present at this address at the time of the assault; it was not necessary that he actually see a weapon in order to arrest Plaintiff. (*Id.* ¶ 11). And a victim's

reliability as a source of information is not called into question simply because he and Plaintiff had a relationship with the same woman.

Detective Williams had probable cause to arrest. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir.1989).

Finally, Plaintiff asserts, in conclusory fashion, that the NYPD Aided Report (which describes Mr. Williams' injuries and the medical attention he received from Emergency Medical Services on December 24, 2017) has not been authenticated. But Plaintiff has not offered any evidence to cast doubt on the authenticity of this report; it is both a public record and a business record of the Police Department, so it is both admissible (Fed. R. Evid. 803(8) and (3)) and is self-authenticating (Fed. R. Ev. Rule 902(4)). Moreover, there is no evidence that Detective Williams relied on the Aided Report to establish probable cause for arresting Plaintiff; there is no evidence that the document was prepared before the decision to arrest was made, let alone that the Detective saw it.

There is not a scintilla of evidence to support any argument that probable cause was lacking in this instance. Mr. Williams' information alone is all that the law requires; taken together with the additional supporting evidence available to Detective Williams, it is indisputable that the Defendant Officers acted with probable cause to effect a lawful arrest.

Summary judgment dismissing Plaintiff's false arrest claim (Count IV) is GRANTED.

**III. The Motion for Summary Judgment on Plaintiff's Malicious Prosecution Claim is Granted (Count VIII)**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the

elements of a malicious prosecution claim under state law." *Manganiello v. City of N.Y.*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted). To establish malicious prosecution under New York law, the Plaintiff must show (i) the initiation or continuation of a criminal proceeding against plaintiff; (ii) termination of the proceeding in plaintiff's favor; (iii) lack of probable cause for commencing the proceeding; and (iv) actual malice as a motivation for defendant's actions. *Id.*

As with a false arrest claim, probable cause is a complete defense. *Minott v. Duffy*, No. 11 CIV. 1217 KPF, 2014 WL 1386583, at *15 (S.D.N.Y. Apr. 8, 2014). "A grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution . . . thereby is defeated." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir.2006). The "presumption of probable cause may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) (emphasis in original). Therefore, the plaintiff has the burden "to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (internal quotations and citations omitted).

Here, Plaintiff has not offered any evidence tending to rebut the presumption of probable cause that the indictment created in this case. Plaintiff merely asserts once again the same arguments presented for his false arrest claim – that Mr. Williams was not reliable; that Defendants did not see Mr. Williams' actual injury; and that no weapon was recovered or observed on Plaintiff's person. (Dkt. No. 35 at 9). These allegations do not give rise to a genuine dispute of material fact as to whether the indictment was procured by fraud, perjury, or other bad faith conduct.

The motion for summary judgment dismissing Count VIII, the malicious prosecution claim, is GRANTED.

### IV. The Motion for Summary Judgment on Plaintiff's Malicious Abuse of Process Claim is Granted (Count X)

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino*, 331 F.3d at 76-77 (internal citations and quotation marks omitted).

Plaintiff has not offered any evidence to support any of the elements of this claim. Plaintiff's opposition to the motion for summary judgment appears to suggest that Detective Williams pursued a collateral objective through clocking additional overtime hours. He states that "even though he was not working when Plaintiff was arrested on January 3, 2018, [Detective Williams] nonetheless came into the office that evening in order to process paperwork, and interview the Plaintiff which . . . would constitute overtime hours." Plaintiff supports this allegation only through citing Detective Williams' testimony, in which he stated, "I wasn't working that day, I was home. This person was apprehended, I was then called and I came to work, and I started the arrest process." (Dkt. No. 34-2 at 47). This statement alone does not raise a genuine issue of material fact that Detective Williams regularly employed the legal process to obtain a collateral objective outside the legitimate ends of process.[2]

---

[2] Plaintiff also alleges without any evidence that "there are issues of fact that the officers decided to arrest Marshall only after learning of his prior criminal history." (Dkt. No. 35 at 11). I note that Plaintiff's name is not "Marshall;" this causes the court to wonder whether counsel has inadvertently or carelessly included an argument that applies, not to this case, but to some other case.

12

The motion for summary judgment dismissing Count X, the malicious abuse of process claim, is GRANTED.

## V. The Motion for Summary Judgment on Plaintiff's Unlawful Search and Seizure Claim is Granted (Count II)

Finally, Plaintiff alleged in his Complaint that the individual defendants "illegally searched" him, despite the fact that Plaintiff "had neither committed any crimes nor [] exhibit[ed] indicia of criminal activity." (Compl. ¶ 23). The Complaint further alleges that "upon arrival at the precinct, Defendants . . . conducted or authorized an illegal strip search and cavity inspection of [Plaintiff's] person." (*Id*. ¶ 27).

Of course, the above discussion disposes of any suggestion that Plaintiff never "exhibited indicia of criminal activity;" there was probable cause to arrest him for a serious assault with a sharp object. So the predicate for this claim falls flat.

However, in his opposition to the motion for summary judgment, Plaintiff does not point to any evidence that would support an allegation that any of the Defendants subjected him to a strip or cavity search. At his deposition, Plaintiff explicitly testified that he was not subjected to a strip search or cavity search while at the Precinct. (Dkt. No. 34-3 at 64; *see also* Plaintiff's Counter-Statement of Undisputed Material Facts (Dkt. No. 36) at ¶ 16-17). That is the location where any of the named Defendants would have strip searched Plaintiff, had that occurred.

Plaintiff was never asked during his deposition whether he was strip searched or cavity searched while at Rikers Island, and there is no *evidence* that any such search occurred. (*See generally* Dkt. No. 34-3). Plaintiff merely states in his opposition to the motion for summary judgment that "it is common knowledge and procedure at Rikers Island that incarcerated inmates are subjected to gratuitous strip searches with attendant cavity inspections." (Dkt. No. 35 at 8). But

"common knowledge" is not enough to get him past a motion by these named Defendants for summary judgment. "Common knowledge" does not raise genuine issues of material fact.

But assuming arguendo that "common knowledge" is correct, and that inmates admitted to Rikers Island are routinely strip searched, there is not a scintilla of evidence that anyone who is named as a Defendant in this case – none of whom is a corrections officer who works at Rikers Island – participated in any such search. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

To get around the lack of personal involvement, Plaintiff argues that strip searches and cavity searches at Rikers Island were "a *proximate result* of the complained-of actions of Defendants" – in other words, the Defendants themselves did not conduct such a search, but they indirectly caused such a search to happen by wrongfully arresting him. (Dkt. No. 35 at 8 (emphasis added); *see also* Dkt. No. 34 at 11). Plaintiff quotes *Zahrey v. Coffey*, 221 F.3d 342, 351 (2d Cir. 2000) for the proposition that defendants in § 1983 actions are liable where "where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." He argues that "Plaintiff's instant arrest and prosecution triggered a parole hold whereupon Plaintiff was held at Rikers Island, and . . . damages sustained by Plaintiff [that] were reasonably foreseeable as a result of the Defendants' misconduct." (Dkt. No. 35 at 12).

However, as shown through the above discussion and analysis, Plaintiff has not offered any evidence to support his allegations that the Defendant Officers engaged in *any* wrongdoing at any point. They had probable cause to arrest him and to initiate a prosecution for the crime of assault. Lacking any evidence that Plaintiff was falsely arrested, there is no basis to conclude that

the named Defendants had anything to do with the fact that Plaintiff was subjected to a parole hold and sent to Rikers Island. The argument predicated on *Zahrey* is entirely irrelevant.

Accordingly, summary judgment dismissing Plaintiff's unlawful search and seizure claim (Count II) is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to remove Dkt. No. 28 from this court's list of open motions and to close the file.

Dated: March 27, 2023

                                                                                         U.S.D.J.

TO ALL PARTIES BY ECF